UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN COURTHOUSE

| | |
|---|---|
| Cory Henderson, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  - against -<br><br>Conagra Brands, Inc.,<br><br>    Defendant, | 1:22-cv-07603<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Conagra Brands, Inc. ("Defendant") manufactures, labels, markets, and sells pancake mix under the Log Cabin brand ("Product").



**I.     "ALL NATURAL"**

2. According to Merriam-Webster, "natural" means "existing or caused by nature; not made or caused by humankind."

3. Where something is labeled as "all natural," it is understood that all components will be natural and will not contain ingredients formulated or manufactured by a process that chemically or fundamentally changes a substance.

4. "Synthetic" and "artificial" are considered synonymous by laypersons, and refer to things or processes not found in nature or produced by human beings.

5. Consumers value products labeled as "all natural" because they believe they are healthier, safer, and more nutritious than those without this statement.

6. The representation that the Product is "All Natural" is false and misleading because, among other reasons, it contains sodium bicarbonate, or baking soda.

INGREDIENTS: WHOLE WHEAT FLOUR, WHEAT FLOUR, EVAPORATED CANE SYRUP, BAKING POWDER (CREAM OF TARTAR, BAKING SODA), SEA SALT, NATURAL FLAVOR.

7. Sodium bicarbonate is prepared by heating a certain kind of ore until it turns to soda ash, and then combined with carbon dioxide. See 21 C.F.R. §184.1736

8. The addition of carbon dioxide is not a natural process and not one consumers would consider natural.

9. Methods for producing baking soda without carbon dioxide exist and are

commercially and technologically feasible.

**II.    WHOLE GRAIN CLAIMS**

10. Consumers increasingly prefer whole grains to non-whole, or refined, grains.

11. Whole grains are nutritionally superior to non-whole grains because they include the entire grain seed, consisting of the endosperm, bran, and germ.

12. The bran and germ contain important nutrients like fiber, vitamins, minerals, and antioxidants, such as iron, zinc, folate, magnesium, thiamin, niacin, selenium, riboflavin, manganese, copper, vitamin A, and vitamin B6.

13. In contrast, "non-whole grains" or "refined grains" have been processed to remove the bran and germ, thereby removing the fiber and most other nutrients.

14. Most refined grains are enriched, a process that adds back some of the previously removed iron and B vitamins, such as thiamin, riboflavin, niacin, and folic acid.

15. Other nutrients, including fiber, vitamin E, vitamin B6, vitamin K, magnesium, manganese, potassium, phosphorus, copper, calcium, and selenium, are not added back.

16. Where flour is made of refined grains, which only contains the endosperm and mainly starch, it is white in color ("white flour").

17. The 2015-2020 Dietary Guidelines for Americans recommend that at least half of all grains eaten be whole grains.

   A. Fiber Claim

18. The Dietary Guidelines recommend consuming 48g of whole grains and 28g of fiber per day.

19. The Dietary Guidelines promote whole grains as an important source of fiber.

20. 87% of consumers try to consume more whole grains and 92% try to get more fiber.

21. Nutrient content claims are authorized ways companies can tell consumers about the levels of a nutrient in a food.

22. FDA regulations, identical to those of this State, restrict nutrient content claims to those that are specifically authorized.

23. The purpose is to prevent consumers being deceived by the endless terms that marketers can devise in order to gain advantage in the marketplace, at the detriment of the public.



24. Representing that a food is a "good source" of certain nutrients is a nutrient content claim. 21 C.F.R. § 101.54(c).

25.     The FDA has defined "Good Source" claims to mean that a food provides between 10 and 19 percent of the recommended daily intake (RDI) or daily recommended value (DRV) per reference amount customarily consumed.

26.     However, the Product is not a "good source" of fiber because it provides 1g of fiber per serving, or four percent of the daily value, shown on the Nutrition Facts.



B.  Relative and Absolute Amount of Whole Grains

27.     Though the Product's front label states, "Made With Whole Grains" and it contains more whole than refined grains, it fails to disclose the percent of grains that are refined.

28.     Even if consumers review the ingredients, which list "Whole Wheat Flour" ahead of 'Wheat Flour," they will not learn the relative amount of refined and whole grains.

**INGREDIENTS:** Whole Wheat Flour, Wheat Flour, Evaporated Cane Syrup, Baking Powder (Cream of Tartar, Baking Soda), Sea Salt, Natural Flavor.

29. Reasonable consumers will be unaware that based on calculations from the ingredient list and Nutrition Facts, the estimated amount of whole grains slightly exceeds refined grains.

30. The result is greater consumption of the Product to consume more whole grains.

31. While in itself, it would be beneficial to consume foods with more whole than non-whole grains, most grain foods do not contain whole grains.

32. Consumers rely on foods which emphasize whole grains to make up for their whole grain deficit.

33. However, since the Product contains only a small amount more of whole than refined grains, they will be unsuccessful in attempting to adhere to the Dietary Guidelines throughout their normal day, in making half their grains whole.

### III. CONCLUSION

34. The Product declares "evaporated cane syrup" as an ingredient, which is the common name for sugar.

35. Consumers seek to avoid heavily processed sugars, and believe this ingredient refers to a better type of sweetening ingredient.

6

36. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $3.89 for 794g, excluding tax and sales, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

37. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

38. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

39. Plaintiff Cory Henderson is a citizen of New York.

40. Defendant Conagra Brands, Inc., is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois.

41. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

42. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in tens of thousands of locations in the States covered by Plaintiff's proposed classes, such as grocery stores, convenience stores, big box stores, drug stores, and online.

43. Venue is in this District and assignment is to the Manhattan Courthouse because Plaintiff resides in this District in New York County, and the transactions, exposure to and reliance upon the statements at issue, and awareness they were misleading occurred in this District.

## Parties

44. Plaintiff Cory Henderson is a citizen of New York, New York, New York County.

45. Defendant Conagra Brands, Inc., is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois.

46. Defendant owns and controls the Log Cabin brand of dry mixes.

47. Log Cabin is a preeminent brand in the selling of pancake products, from syrups to mixes.

48. Consumers trust the Log Cabin brand to be honest with them because it has built up a positive reputation in this area.

49. Plaintiff read, relied on, and/or was exposed to the statements including "All Natural," "Made With Whole Grains," the description as a "good source of fiber," and/or "evaporated cane syrup."

50. Plaintiff believed the Product was natural consistent with the above definition, that the Product was a good source of fiber, and that evaporated cane syrup was different than traditional sugar.

51. Plaintiff is part of the majority of consumers who prefers foods that are natural, seeks to consume more fiber, and avoid excess sugars.

52. Plaintiff knows that manufactured foods must contain ingredients other than raw agricultural materials, but expects that the ingredients are not created through processes which chemically or fundamentally transform the starting materials to what is eventually used.

53. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Stop and Shop, 111 Vredenburgh Ave, Yonkers, NY 10704, between 2020 and 2022, and/or among other times.

54. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and

instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

55. Plaintiff bought the Product at or exceeding the above-referenced price.

56. Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading and would have paid less or not purchased it.

57. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

## Class Allegations

58. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of Ohio who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of New Hampshire, North Carolina, Arkansas, Utah, Iowa, Kansas, Louisiana, and North Dakota who purchased the Product during the statutes of limitations for each cause of action alleged.

59. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

60. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

61. Plaintiff is an adequate representative because his interests do not conflict with other members.

62. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

63. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

64. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

### New York General Business Law §§ 349 and 350

65. Plaintiff incorporates by reference all preceding paragraphs.

66. Plaintiff believed the Product was entirely natural, was a good source of fiber, the difference between the whole and refined grain content was significant, and that evaporated cane syrup was a "better-for-you" type of sweetening ingredient as opposed to being simple sugar.

67. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

68. Plaintiff relied on these representations and omissions.

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

69. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

70. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

71. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

## Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

72. The Product was manufactured, identified, distributed, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it was entirely natural, including its ingredients and that the processes used to make the ingredients did not chemically or substantially transform one substance to another, was a good source of fiber, the difference between the whole and refined grain content was significant, and that evaporated cane syrup was a "better-for-you" type of sweetening ingredient as opposed to being simple sugar.

73. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

74. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, to buy a food that was natural, a good source of fiber, contained a significant amount and percent more whole compared to refined grains, and that evaporated cane syrup was a "better-for-you" type of sweetening ingredient as opposed to being simple sugar.

75. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it was entirely natural, a good source of fiber, and had a significant amount and percent more whole compared to refined grains.

76. Defendant's representations affirmed and promised that it was entirely natural, a good source of fiber, and had a significant amount and percent more whole compared to refined grains.

77. Defendant described the Product so Plaintiff and consumers believed it was entirely

natural, a good source of fiber, and had a significant amount and percent more whole compared to refined grains, which became part of the basis of the bargain that it would conform to its affirmations and promises.

78. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

79. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its pancake-centric products, under the Log Cabin brand.

80. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

81. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

82. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

83. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

84. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it was entirely natural, a good source of fiber, and had a significant amount and percent more whole compared to refined grains.

85. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it was entirely natural, a good source of fiber, and had a significant amount and percent more whole

compared to refined grains, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

86. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

87. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was entirely natural, a good source of fiber, and had a significant amount and percent more whole compared to refined grains.

### Unjust Enrichment

88. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary, statutory and punitive damages, and interest;
3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
4. Other and further relief as the Court deems just and proper.

Dated:   September 6, 2022

Respectfully submitted,

/s/Spencer Sheehan

Sheehan & Associates, P.C.<br>
60 Cuttermill Rd Ste 412<br>
Great Neck NY 11021<br>
Tel: (516) 268-7080<br>
Fax: (516) 234-7800<br>
spencer@spencersheehan.com